**MELKA MARINE, INC.,**
**Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

Nos. 01–5056, 01–5078.

United States Court of Appeals,
Federal Circuit.

Feb. 6, 2002.

Before MAYER, Chief Judge,
MICHEL, and LOURIE, Circuit Judges.

## DECISION

LOURIE, Circuit Judge.

Melka Marine, Inc. appeals from two orders of the United States Court of Federal Claims returning its applications for attorney fees pursuant to the Equal Access to Justice Act ("EAJA"). *Melka Marine, Inc. v. United States,* No. 96–536 C (Fed.Cl. Dec. 4, 2000) (order); *Melka Marine, Inc. v. United States,* No. 96–536 C (Fed.Cl. Feb. 1, 2001) (order). Because the court did not err in returning the applications, we *affirm.*

## DISCUSSION

Melka's appeal directly concerns only its applications for attorney fees filed in the Court of Federal Claims. However, to better understand the issue concerning its fee applications, an understanding of the overall procedural history of the case is useful.

In 1994, the Department of the Navy awarded Melka a contract for dredging along the Potomac River near Washington, D.C., as well as construction and repair of marine structures along the river. Melka was unable to start (and complete) the

work according to the agreed-upon time schedule because the Navy was unable to timely obtain a dredging permit from the Army Corp of Engineers. Melka brought suit in the Court of Federal Claims, seeking so-called *"Eichleay"* damages for unabsorbed overhead resulting from what it asserted was government-caused delay from November 16, 1994, to March 30, 1995. The Court of Federal Claims dismissed Melka's complaint, *Melka Marine, Inc. v. United States*, 41 Fed. Cl. 122 (1998), and we affirmed-in-part. We also remanded-in-part for a redetermination of the *Eichleay* damages for the time period between January 4 and February 2, 1995, *Melka Marine, Inc. v. United States*, 187 F.3d 1370 (Fed.Cir.1999). Melka sought Supreme Court review of our decision, but its petition for a writ of certiorari was denied on April 3, 2000. *Melka Marine, Inc. v. United States*, 529 U.S. 1053, 120 S.Ct. 1555, 146 L.Ed.2d 460 (2000). Meanwhile, the parties agreed to settle the remanded portion of Melka's claim for just over $16,000, and for that purpose they filed in the Court of Federal Claims on October 26, 2000, a Joint Stipulation for Entry of Judgment drafted by Melka. The Court of Federal Claims entered judgment pursuant to the Joint Stipulation on November 1, 2000. On its face, the Joint Stipulation repeatedly and explicitly limits the settlement to the remanded claim only. By its express language, the Joint Stipulation specifically excluded Melka's claims for attorney fees and for *Eichleay* damages for delays that occurred outside the remanded time interval (*i.e.*, from January 4 to February 2, 1995). Apparently under the impression that the Supreme Court had denied its petition for a writ of certiorari regarding our 1999 decision because we had partially remanded the case, Melka sought Supreme Court review of our 1999 decision a second time, on January 29, 2001, after the Court of Federal Claims

had entered judgment on the remanded claim pursuant to the Joint Stipulation. The Supreme Court returned Melka's second petition for want of jurisdiction, as we had not entered a fresh judgment subsequent to our 1999 decision.

Melka first filed an application for attorney fees under the EAJA in the Court of Federal Claims on December 1, 2000, exactly one month after the entry of judgment on the remanded claim. On December 4, that court ordered the application returned as unfiled on the grounds that it was prematurely filed and not made under oath. According to the court, Melka's application was premature because its November 1 judgment would not become final until the appeal period elapsed, sixty days later. Fed. R.App. P. 4(a)(1)(B). Dissatisfied with the court's action on its application, Melka took two actions on January 26, 2001: it filed a Notice of Appeal in this court from the December 4 order, and it resubmitted its application to the Court of Federal Claims. On February 1, 2001, the Court of Federal Claims ordered the resubmitted application returned as unfiled on the ground that it was untimely due to Melka's filing of the Notice of Appeal, which deprived that court of jurisdiction over the case. Melka filed another Notice of Appeal in this court from that February 1 order.

■ To the extent that the trial court's orders rested on an interpretation of the EAJA, we review that interpretation *de novo*. To the extent that the court's orders returning Melka's fee applications rested on the court's local rules or an application of the court's local rules – matters within the sound discretion of the trial court – we review the court's decision for an abuse of discretion. *See VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1476 (9th Cir.1986) (applying an abuse of discretion standard in re-

viewing a district court's denial of a request for attorneys' fees on the ground that the request was not timely under local rules); *see also Chiu v. United States,* 948 F.2d 711, 713 (Fed.Cir.1991) ("A trial court's decision to award attorney fees under the EAJA, and its determination of the amount of such an award are discretionary. On appeal, decisions concerning attorney fees are reviewed for abuse of discretion.") (citing *Pierce v. Underwood,* 487 U.S. 552, 557–63, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)).

On appeal, Melka argues that its first fee application (filed on December 1, 2000) was timely submitted because Rule 81 of the Court of Federal Claims required it to submit the application within thirty days of final judgment, *i.e.,* between November 1 and December 1, 2000. Melka also argues that its fee application was submitted under oath to the extent that Rule 81 requires an oath, and that, in any event, the lack of oath is not a fatal defect. Melka concedes that it filed its second application (filed on January 26, 2001) merely as a protective measure, should its first application be ineffective.

The United States responds that Melka's first application was premature because, pursuant to 28 U.S.C. § 2412(d)(1)(B), read in light of § 2412(d)(2)(G), Rule 81's thirty-day period for filing a fee application under the EAJA does not begin until after the time to appeal has expired, which is sixty days from entry of final judgment, according to Fed. R.App. P. 4(a)(1)(B). The government also responds that Melka's second fee application was untimely because Melka's simultaneous filing of a Notice of Appeal divested the Court of Federal Claims of jurisdiction.

■ We affirm the court's order returning the first fee application, but on a somewhat different ground from that indicated in the order. Melka's first application was premature because the court's November 1, 2000 judgment was not a final judgment. The EAJA specifies that a prevailing party seeking attorney fees in a case against the federal government shall submit an application "within thirty days of final judgment in the action." 28 U.S.C. § 2412(d)(1)(B) (1994). The EAJA defines "final judgment" as "a judgment that is final and not appealable, and includes an order of settlement." 28 U.S.C. § 2412(d)(2)(G). Thus, a judgment must meet two requirements before an EAJA fee application can be filed: finality and non-appealability. The November 1, 2000 judgment fails to satisfy the first requirement, finality, because it concerned only a portion of the claims in the case. A final judgment is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Allen v. Principi,* 237 F.3d 1368, 1372 (Fed.Cir.2001). A judgment disposing of only some asserted claims is typically not final. *Aluet Tribe v. United States,* 702 F.2d 1015, 1020 (Fed.Cir.1983). However, an important exception to that general rule is found in Fed.R.Civ.P. 54(b), which permits an appeal from a partial judgment if certified for appeal by the trial court. *Id.; CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG,* 224 F.3d 1308, 1314, 55 USPQ2d 1804, 1808 (Fed.Cir.2000). In this case, the court's November 1, 2000 judgment decided only the remand claim. All other claims remained, per the Joint Stipulation, as Melka was planning its second appeal to the Supreme Court on the remaining claims. The Court of Federal Claims did not issue a Rule 54(b) certification. Consequently, the court's November 1, 2000 judgment was not a final disposition of the case, and thus Melka's first fee application was premature.

As for Melka's second application, we agree with the government's contention, which is undisputed by Melka, that it was filed untimely by virtue of Melka's filing of a Notice of Appeal, "an event of jurisdictional significance," conferring jurisdiction on us and divesting the trial court of its control over those aspects of the case involved in the appeal. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982).

That is not to say, however, that Melka's fee application may never be further considered. The non-appealability requirement of § 2412(d)(1)(B) has been interpreted to mean that "[t]he 30–day EAJA clock begins to run after the time to appeal that 'final judgment' has expired." *Melkonyan v. Sullivan*, 501 U.S. 89, 96, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). In a case against the government, the appeal period expires sixty days after entry of final judgment. Fed. R.App. P. 4(a)(1)(B). The Court of Federal Claims has interpreted *Melkonyan* as establishing "only a final deadline for the filing of an EAJA petition, not a window within which an EAJA petition must be filed," thus apparently permitting filing before the beginning of the period. *Gonzalez v. United States*, 44 Fed. Cl. 764, 767 (1999). We do not decide today whether *Gonzalez* correctly interpreted *Melkonyan*. We only note that counsel for the government conceded at oral argument that the government will not challenge the timeliness of an attorney fee application filed by Melka within the *Melkonyan* window, *i.e.*, sixty to ninety days after entry of complete, as opposed to partial, final judgment. When a properly filed fee application is made at that time, the Court of Federal Claims should accept such application and consider the attorney fee issue on its merits without any prejudicial effect from Melka's two unsuccessful applications that have been the subjects of this appeal.

Because the court's return of Melka's EAJA attorney fee applications was in accordance with law and not an abuse of discretion, we

*AFFIRM.*